Argued October 22, affirmed November 25, 1974

IN THE MATTER OF CHRISTOPHER WEAVER, A CHILD.
CHILDREN'S SERVICES DIVISION, *Appellant,*
*v.* WEAVER (No. 37,595), *Respondent.*
528 P2d 556

*Rhidian M. M. Morgan,* Assistant Attorney General, Salem, argued the cause for appellant. With him

on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

No appearance by respondent.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

This is an appeal by the Children's Services Division (CSD) from two provisions incorporated into an order of the juvenile court terminating parental rights and permanently committing the involved child to CSD for adoption. The order in its entirety provided:

"1. Christopher be and hereby is continued as a ward of the Court.

"2. The parental rights of John Weaver, Sr., father, be and the same hereby are terminated.

"3. Christopher be and hereby is permanently committed to Children's Services Division for adoptive placement.

"4. Children's Services Division is to extend its utmost capabilities to place Christopher for adoption within the next ninety (90) days.

"5. The Court is to be apprised within said period of time that the child has been adopted. In the event said adoption does not take place within said period, the case is to come back for review before Judge Deiz."

CSD here contends the latter two of these provisions are in excess of the juvenile court's authority, arguing that where the juvenile court law (ORS ch 419) provides for permanent commitment to CSD it was contemplated that CSD, acting *in loco parentis,* would be in absolute control with reference to the child,

precluding any "interference" by the juvenile court. CSD relies specifically on ORS 419.527 (1)(a):

"(1) After the entry of an order terminating the rights of the parent or parents of the child, the court may:

"(a) Place the child in the legal custody and guardianship of a public or private institution or agency authorized to consent in loco parentis to the adoption of children. An order pursuant to this paragraph is a 'permanent commitment' for the purposes of ORS 109.305, 109.310 to 109.330 and 109.345 to 109.390 * * *"

and ORS 109.316 (1):

"(1) The Children's Services Division or an approved child-caring agency of this state, acting in loco parentis, may consent to the adoption of a child who has been:

"* * * * *

"(b) Permanently committed to it by order of a court of competent jurisdiction * * *

"* * * * *."

While not overlooking either of these provisions, we feel that they must be considered in conjunction with ORS 419.507 which explicitly delineates the authority held by a juvenile court over a child made its ward. In 1973 the Oregon Legislature amended this statute, explicitly providing:

"(f) Commitment of a child to the Children's Services Division does not terminate the court's continuing jurisdiction to protect the rights of the child or his parents or guardians." Oregon Laws 1973, ch 495, § 1.

The history of this paragraph was related by the Supreme Court in *State ex rel Juv. Dept. v. Richardson,* 267 Or 374, 517 P2d 270 (1973), where it was noted that our decision in the same case (13 Or App

259, 508 P2d 476 (1973)) had been made prior to its addition:

> "The legislative history of the statute during the 1973 Session indicates that subsection (f) was added in response to the Court of Appeals' decision which was described to the legislature to mean that 'once we [the juvenile court] commit to the Children's Services Division, we have no control of the child.'
>
> "Presently, as a result of the amendment, the juvenile court's jurisdiction continues *in all matters* affecting the protection of the rights of the child or his parents or guardians * * *." (Brackets theirs.) (Emphasis supplied.) 267 Or at 378.

CSD seeks to convince us this language does not contemplate that the juvenile court may make orders such as Paragraphs 4 and 5 of the court's judgment quoted above. The gravamen of this argument is that ORS 419.527 places special limitations upon continuing jurisdiction of the juvenile court in cases where parental rights are terminated and commitment is made to CSD. *See* ORS 419.527 (1)(a), supra, and 109.316(1), supra. This section must be read *in pari materia* with the entire juvenile court Act, and particularly the succeeding section, ORS 419.529 (1) and (4), which, *in pertinent part,* provides:

> "(1) * * * [T]he court may modify or set aside any order made by it upon such notice and with such hearing as the court may direct.
>
> "(2) Except * * *
>
> "* * * * *
>
> "(4) [n]o order * * * may be set aside or modified during the pendency of a proceeding for the adoption * * * nor after * * * adoption * * *."

In *Richardson* the juvenile court had sought to "protect" the "right" of both the child involved and

his parents to enjoy visitation opportunities; the Supreme Court held the 1973 amendment to ORS 419.507 to have granted the court this power. We believe the juvenile court to now possess the authority to "protect" all similar "rights," among which is the right of a child to enjoy membership in a permanent home and family while he is still young. *See State v. Blum,* 1 Or App 409, 463 P2d 367 (1970).

By Paragraphs 4 and 5 the court recognized that if an adoption proceeding was pending or completed it could not then change its order; it also recognized that if none was pending or completed within 90 days it could have a further review or hearing directed toward "setting aside or modifying" its previous orders if that was indicated as a means of protecting the child's best interests and rights. We note that the child in this case is now 10 years of age and that the record indicates in all probability he will remain "adoptable" for only a short period; in light of these facts we cannot say the juvenile court exceeded its authority by providing in essence that it be kept abreast of the child's status as a means of protecting his interest in swift adoptive placement.

██ The juvenile court Act confers on the juvenile court a continuing responsibility to protect the rights of children made its wards; in this case we think it clear that those rights were best protected by measures calculated to insure that a concerted effort would be made to place the child in an adoptive home without delay. The provisions of the court's order challenged here appear to have been designed to that end; if the CSD is unable or unwilling to place the child within a reasonable time the court has the authority under

ORS 419.529 (1) and (4) to set aside or modify its commitment in order to utilize other placement options provided by ORS 419.527 (1)(a).

Affirmed.